UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
TERON EDWARDS, BY HIS GUARDIAN AD LITEM,
NIKIA EDWARDS,

Docket No: 15-CV-3637

                Plaintiff,

SECOND
VERIFIED
AMENDED COMPLAINT

      -against-

THE CITY OF NEW YORK, HAZEL JENNINGS,
Corrections Officers MONROE, ANTHONY SULAIMAN,
LUNDSTROM and NEW YORK CITY HEALTH &
HOSPITALS CORP.,

                Defendants
-------------------------------------------------------------------X

       Plaintiff, by his attorneys, BURNS & HARRIS, as and for Verified Complaint herein,

respectfully sets forth and alleges:

## AS AND FOR A FIRST CAUSE OF ACTION AS AGAINST THE CITY OF NEW YORK, HAZEL JENNINGS and CORRECTIONS OFFICERS MONROE, ANTHONY SULAIMAN AND LUNDSTROM:

      1.   That this action arises under the United States Constitution, particularly under

provisions of the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of

the United States, and under Federal law, particularly the Civil Rights Act, Title 42 of the United

States Code, Section 1983, 1985, 1986 and 1988, and the rights under the Constitution and laws

of the State of New York.

      2. Each and all of the acts of the defendants herein were done by the defendants, their

servants, agents and/or employees, and each of them, not as individuals, but under the color and

pretense of the statutes, ordinances, regulations, customs and usages of the State of New York

and the City of New York, and under the authority of their office as officers of said City and

State.

3. That at all times relevant hereto, the defendant THE CITY OF NEW YORK was a Municipal corporation duly existing under and by virtue of the laws of the State of New York.

4. That at all times relevant hereto, the defendant THE CITY OF NEW YORK was a corporation doing business in the State of New York.

5. That at all times relevant hereto, the defendant THE CITY OF NEW YORK operated a Department of Corrections (DOC) as part of and in conjunction with its municipal function.

6. That at all times relevant hereto, the defendant THE CITY OF NEW YORK maintained said DOC.

7. That at all times relevant hereto, the defendant THE CITY OF NEW YORK managed said DOC.

8. That at all times relevant hereto, the defendant THE CITY OF NEW YORK controlled said DOC.

9. That at all times relevant hereto, the defendant THE CITY OF NEW YORK, owned a certain correctional facility known as Rikers Island Correctional Facility, located in the County of Bronx, City and State of New York.

10. That at all times relevant hereto, the defendant THE CITY OF NEW YORK, its servants, agents and/or employees operated said correctional facility known as Rikers Island Correctional Facility, located in the County of Bronx, City and State of New York.

11. That at all times relevant hereto, the defendant THE CITY OF NEW YORK, its servants, agents and/or employees maintained said correctional facility known as Rikers Island Correctional Facility, located in the County of Bronx, City and State of New York.

12. That at all times relevant hereto, the defendant THE CITY OF NEW YORK, its servants, agents and/or employees managed said correctional facility known as Rikers Island

Correctional Facility, located in the County of Bronx, City and State of New York.

13.   That at all times relevant hereto, the defendant THE CITY OF NEW YORK, its servants, agents and/or employees controlled said correctional facility known as Rikers Island Correctional Facility, located in the County of Bronx, City and State of New York.

14.   That at all times relevant hereto, the defendant THE CITY OF NEW YORK, its servants, agents and/or employees supervised said correctional facility known as Rikers Island Correctional Facility, located in the County of Bronx, City and State of New York.

15.   That at all times relevant hereto, it was the duty of the defendant THE CITY OF NEW YORK, its servants, agents and/or employees to maintain said correctional facility known as Rikers Island Correctional Facility, located in the County of Bronx, City and State of New York, in reasonably safe and suitable condition and repair.

16.   That at all times relevant hereto, it was the duty of the defendant THE CITY OF NEW YORK, its servants, agents and/or employees to maintain said correctional facility known as Rikers Island Correctional Facility, located in the County of Bronx, City and State of New York, in properly and adequately guarded, protected and supervised condition.

17.   That at all times relevant hereto, it was the duty of the defendant THE CITY OF NEW YORK, its servants, agents and/or employees to provide for the safety, security and protection of persons who were inmates of said correctional facility known as Rikers Island Correctional Facility, located in the County of Bronx, City and State of New York.

18.   That at all times relevant hereto, the defendant THE CITY OF NEW YORK, hired, furnished and/or employed certain corrections officers, captains, guards and/or personnel to act as servants, agents and/or employees of the said defendant upon the premises of said correctional facility known as Rikers Island Correctional Facility.

19.  That at all times relevant hereto, HAZEL JENNINGS and  the defendant corrections officers MONROE, SULAIMAN and LUNDSTROM were servants, agents, corrections officers and/or employees of the defendant THE CITY OF NEW YORK, upon the premises of said correctional facility known as Rikers Island Correctional Facility.

20.  That at all times relevant hereto,  HAZEL JENNINGS and  said corrections officers MONROE, SULAIMAN AND LUNDSTROM were acting within the course and scope of their employment and/or as representatives of the defendant THE CITY OF NEW YORK, upon the premises of said correctional facility known as Rikers Island Correctional Facility.

21.  That at all times relevant hereto, the defendants herein knew or could and should have known that numerous crimes had been and were occurring within the said correctional facility known as Rikers Island Correctional Facility.

22.  That at all times relevant hereto, the defendants knew or could and should have known that a routine of extraordinary violence by corrections officers and/or personnel was frequent and/or customary upon the premises of said correctional facility known as Rikers Island Correctional Facility.

23.  That at all times relevant hereto, the defendants knew or could and should have known that a routine of extraordinary violence by said defendant corrections officers MONROE and  SULAIMAN and other corrections officers, was frequent and/or customary upon the premises of said correctional facility known as Rikers Island Correctional Facility.

24.  That the defendant, THE CITY OF NEW YORK, its DOC , C.O.s  MONROE and SULAIMAN and other  corrections officers  have engaged in a pattern and practice of excessive force and extraordinary violence toward the prisoners under their charge. This is inferred from the numerous individual and class action lawsuits brought by inmates of Rikers Island for

excessive force including: Fisher v. Koehler, 83 Civ. 2128 (S.D.N.Y), a class action brought in 1990 addressing excessive use of force at Rikers; Reynolds v. Ward, 81 Civ. 101 (S.D.N.Y 1990) class action for excessive and unnecessary for at the Bellevue Prison Psychiatric Ward; Sheppard v. Phoenix, 91 Civ. 4148 (S.D.N.Y. 1998), a class action related to excessive force in the Central Punitive Segregation Unit at Rikers; Nunez v. City of New York, 11 CV 5845 (S.D.N.Y.), class action suit brought by Rikers inmates for excessive force by corrections officers; Anum Moore v. City of New York, Bronx County Index Number 21580/05, case alleging excessive force by corrections officers at Rikers caused broken jaw, settled for $399,000; Reynolds v. City of New York, 11 Civ. 621 (S.D.N.Y.) case alleging excessive force by corrections officers at Rikers caused fractured shoulder and loss of consciousness, settled for $200,500; Mull v. City of New York, 08 Civ. 8854 (S.D.N.Y.) alleging excessive force by corrections officers at Rikers caused brain injury, loss of hearing and eyesight, settled for $550,000; Belvett v. City of New York 09 Civ. 8090 (S.D.N.Y) alleging excessive force by corrections officers at Rikers caused facial fracture, settled for $350,000; Williams v. City of New York, 07 Civ. 11055 (S.D.N.Y.) alleging excessive force by corrections officers at Rikers caused fractured jaw settled for $202,500.

25. Further, this pattern and practice of excessive and unnecessary force was investigated by the United States Attorney's office for the Southern District of New York. The US Attorney's office, after reviewing hundreds of thousands of pages of Department of Corrections records, conducting tours of the facilities and interviewing staff and inmates, documented their findings in an open letter sent to the Mayor's office, the Commissioner of the Department of Corrections and Corporation Counsel on August 4, 2014. Their findings included that there is a patterns and practice of conduct at Rikers that violates the constitutional rights of adolescent inmates,

specifically 16-18 year olds (which includes Teron Edwards who was 18 at the time he was confined to Rikers). The US Attorney's office found that adolescent inmates are the subjects of rampant and unnecessary and excessive force by Department of Corrections Staff, are not adequately protected from harm caused by violence of other inmates and are subjected to excessive use of punitive segregation, or solitary confinement at an alarming rate and for excessive periods of time.

26.    That at all times relevant hereto, it was the duty of the defendants herein, their servants, agents and/or employees to prevent said routine and/or incidents of extraordinary violence by defendant corrections officers and/or personnel upon the premises of said correctional facility known as Rikers Island Correctional Facility.

27.    That commencing on the 29th day of January, 2014, the plaintiff was an inmate upon the premises of said correctional facility known as Rikers Island Correctional Facility, located in the County of Bronx, City and State of New York.

28.    That commencing on/or about the 29th day of January, 2014, and for a prolonged period of time continuing thereafter, the plaintiff was lawfully present upon the premises of said correctional facility known as Rikers Island Correctional Facility, located in the County of Bronx, City and State of New York.

29.    That at all times relevant hereto, certain defendant corrections officers and/or personnel of the defendants THE CITY OF NEW YORK and its DOC were present upon the premises of said correctional facility known as Rikers Island Correctional Facility, located in the County of Bronx, City and State of New York.

30.    That commencing on/or about the 29th day of January, 2014, and continuing throughout his incarceration at Rikers until August 28, 2014, the plaintiff was caused to be

injured while present upon the premises of said correctional facility known as Rikers Island Correctional Facility, located in the County of Bronx, City and State of New York.

31.   That commencing on/or about the 29th day of January, 2014, and continuing throughout his incarceration at Rikers until August 28, 2014, the plaintiff was caused to be intentionally, wantonly, maliciously, brutally, violently, savagely, relentlessly and unlawfully attacked, assaulted, beaten, battered, molested, persecuted and abused by the defendant corrections officers MONROE and SULAIMAN and other corrections officers, upon the premises of said correctional facility known as Rikers Island Correctional Facility, located in the County of Bronx, City and State of New York.

32.   That on February 3, 2014, at the Robert N. Davoren Complex (RNDC) at Rikers Island, the plaintiff was allowed to be attacked and beaten by another inmate, Jessie Buila, while Corrections Officers were in the vicinity and allowed the beating to occur and did nothing to protect Mr. Edwards or stop the attack.

33.   This attack, and several others that Teron Edwards was subjected to as outlined below, occurred because the 18 year-old prisoner population at Rikers are inadequately supervised by inexperienced and inadequately trained corrections officers as noted in the findings of the U.S. Attorneys office as noted in paragraph 25.

34.   That February 14, 2014, the plaintiff punched a wall in his own cell injuring no one. He was taken for a psychiatric assessment during which he stated "I am frustrated, I am tired of being in a cell. I punched the wall, I am alright." He was evaluated for a psychiatric assessment by an R-PAC, Renan Beauchard, who noted he had no history of mental illness, had a job and strong family relationships prior to his arrest and was fully functional with respect to activities of daily living, he was wrongly determined to require transfer to a MOD-8S, a housing unit for the

mentally ill. The medical record created and signed by PA Beauchard on February 14, 2014 was not reviewed or co-signed by a Medical Doctor until April 4, 2014, almost 2 months after Mr. Edwards' wrongful transfer to a mental housing unit. The Medical Doctor who reviewed the note, Dr. David Rosenberg, determined that the hitting of the wall out of frustration was NOT a suicide attempt and disagreed with the PA's determination which wrongfully sent Mr. Edwards to a housing unit for the mentally ill.

35.   Two days after his wrongful transfer to MOD-8S for mentally ill inmates, on February 16, 2014 he was once again subjected to an attack, this time by several mentally ill prisoners. Multiple members of the Department of Corrections used physical force against Mr. Edwards in breaking up the altercation between the mentally ill inmates and Mr. Edwards. The staff members negligently allowed the attack to occur and then wrongfully abused and battered Mr. Edwards in breaking up the altercation.

36.   The February 16th attack upon Teron Edwards by multiple inmates occurred due to inadequate supervision by inexperienced and inadequately trained corrections officers. Further, the use of force by corrections officers during and after the attack by the inmates was excessive and unnecessary. As noted by the U.S. Attorney's office for the Southern District, the DOC has engaged in "systemic and pervasive pattern and practice of utilizing unnecessary and excessive force against adolescent inmates in violation of the Eighth and Fourteenth Amendments of the Constitution." (See paragraph 25).

37.   On February 19, 2014, Mr. Edwards was seen by mental health and reported that he was in no distress and that everything was "alright" yet he continued to be wrongfully confined to housing for the mentally ill by the staff at Riker's Island.

38.   On February 21, 2014, he was sent for an evaluation by Carl Kent, LMSW, who

determined that the patient had no major depressive, anxious, manic or psychotic symptoms and participated fully in the exam. Although Mr. Edwards was found to have only mild symptoms of a depressed mood, he was again wrongfully disposed to the mental housing unit by the staff at Riker's Island.

39.   On February 26, 2014, the Department of Corrections negligently provided for the safety and well-being of Mr. Edwards when another prisoner was permitted to attack, assault and batter Mr. Edwards causing him to sustain a head injury with visible swelling to his right orbit. This attack occurred while members of the department of corrections were in the area and did nothing to prevent or stop the attack upon him. The DOC was negligent in providing inadequate supervision of the mentally ill, adolescent inmates by inexperienced and inadequately trained corrections officers. After the first attack on February 26, 2014, the Department of Corrections again negligently provided for the safety and well-being of Mr. Edwards, when another prisoner was permitted to attack, assault and batter Mr. Edwards that day. That attack was witnessed by C.O. Lundstrom.

40.   On February 27, 2014, Mr. Edwards was transferred out of the Mental Housing (MO) unit as it was noted he was not suicidal or psychotic and had no significant mental health history. However, the following day, he was once again wrongly transferred to the MO unit without a psychiatric diagnosis.

41.   Despite Mr. Edwards' multiple requests to be transferred back to the general population, he remained in the MO unit where he was subjected to multiple attacks by mentally ill prisoners. On March 3, 2014, Mr. Edwards was seen for a mental health evaluation and reported that he had no history of mental illness and was experiencing no mental health symptoms and did not wish to receive any additional mental health treatment. Once again on

March 5, 2014, Mr. Edwards expressed a wish to cease mental health treatment as he was experiencing no mental health distress.

42.  On March 6, 2014, the DOC once again failed to provide for the safety and well-being of Mr. Edwards when he was once again subjected to an attack by another inmate, Christian Flores, due to the inadequate supervision of the mentally ill, adolescent inmates by inexperienced and inadequately trained corrections officers.

43.  The following day, March 7, 2014 the DOC again failed to provide for the safety and well-being of Mr. Edwards when he was once again subjected to an attack by another inmate, Perez, due to the inadequate supervision of the mentally ill, adolescent inmates by inexperienced and inadequately trained corrections officers.

44.  Later that same day, Teron Edwards was subjected to excessive and inappropriate use of force by DOC staff, through use of a "headshot" (a blow to an inmate's head or facial area with a punch, kick). This attack by DOC staff left him with visible swelling to his left orbit.

45.  The attack upon Mr. Edwards by DOC staff on March 7th was unwarranted and excessive and unfortunately part of a pattern and practice at Rikers Island which was the subject of a class action lawsuit ten years prior to this incident, *Ingles v. Toro*, 01 (Civ. 8279 (DC) wherein a report by a corrections consultant, Steve J. Martin, found that Rikers staff routinely used blunt force head strikes in significantly greater numbers than any other jail system with which he was familiar. The U.S. Attorney for the Southern District found that this "troubling" practice continues still ten years after *Ingles*. (See paragraph 25).

46.  Following this unwarranted and unnecessary use of force against Teron Edwards on March 7, 2014, the incident was falsely reported by members of the DOC and inadequately investigated. Further, Teron Edwards was then wrongly placed in punitive segregation for an

extended period of time.

47.   Teron Edwards was placed in a Restrictive Housing Unit (RHU) at RNDC where he was locked in a cell for 23 hours a day as of March 8, 2014. It is well known to the DOC that excessive use of punitive segregation, can cause significant physiological, physical and developmental harm to adolescences and that 18 year olds are particularly at risk for adverse psychiatric consequences of punitive segregation. (See U.S. Attorney's report, referenced in paragraph 30).

48.   The RHU at RNDC is a program proven to have "little success" and internal memorandum have suggested its elimination due to its harmful outcomes for the prisoners confined in it. The RHU is staffed by DOC members with insufficient training in mental health issues.

49.   By April 16, 2014, due to unnecessary, prolonged period of punitive segregation, Teron Edwards' mental health had deteriorated to such an extent that he was placed on suicide watch.

50.   On April 18, 2014, he was prescribed antipsychotic medication for his continuously deteriorating mental state due to his excessive, prolonged solitary confinement.

51.   On April 21, 2014, he was transferred from RHU in RNDC to RHU in George R. Vierno Center (GRVC) due to his turning 19. He was still subjected to 23 hours a day in his cell. The hour during which he was allowed to leave his cell was 4:00 a.m. which was used as a deterrent to attempt to force him to stay in his cell continuously.

52.   Due to this continued solitary confinement his antipsychotic medication was doubled on April 22, 2014. Despite this, his psychiatric condition continued to deteriorate and he was transferred to Bellevue Hospital on April 30, 2014 with a diagnosis of acute psychosis. He was

returned to RHU at GRVC on May 2, 2014 with such a high dosage of antipsychotic medications that the appeared to be having seizure-like activity. He was determined to be having a dystonic reaction to the medication and was treated at Elmhurst Hospital on May 3rd  and 4th before returning once again to RHU.

53.  Teron Edwards continued to be subjected to unnecessary and unwarranted punitive segregation, placed in a dirty, unsanitary cell, for 23 hours a day. For a period of several weeks in July 2014, the cell had several inches of water on the ground of the cell. Teron Edwards was not provided with adequate food during much of this time. His mental condition continued to deteriorate due to this unconstitutional treatment.

54.  On July 3, 2014, he was once again subjected to excessive and unnecessary use of force by DOC staff. The incident was not properly reported, false documents were prepared by member of the DOC and the incident was not properly investigated.

55.  Despite an obvious acute psychosis due to his confinement in punitive segregation, DOC staff allowed Mr. Edwards to remain in punitive segregation and failed to provide him with the necessary mental health services he needed. It was not until the criminal court ordered a 730 exam due to concerns that he was unfit to proceed with the defense of his case that he was transferred to Bellevue Hospital to receive inpatient mental health care. On August 26, 2014, the court-appointed psychologist found Mr. Edwards unable to assist in the defense of his case and recommended psychiatric hospitalization. Teron Edwards was transferred to Bellevue Hospital on August 28, 2014.

56.  As the foregoing paragraphs detail, defendant, the CITY OF NEW YORK and its agents, the staff of the DOC at Riker's Island egregiously failed, omitted, neglected and refused to provide for the safety, security and protection of the plaintiff, an inmate of said correctional

facility known as Rikers Island Correctional Facility, located in the County of Bronx, City and State of New York. That the defendant, THE CITY OF NEW YORK, its DOC and defendants C.O.s " MONROE and SULAIMAN and other corrections officers  have engaged in a pattern and practice of excessive force and extraordinary violence toward the prisoners under their charge as more fully noted in paragraphs 24 and 25.

57.   As the foregoing paragraphs detail, beginning on   February 3, and continuing through August 28, 2014, the plaintiff has been caused to be seriously, repeatedly and egregiously injured as a result of the carelessness, gross negligence, lack of supervision, excessive, unnecessary and unreasonable use of force, improper placement in punitive segregation and wanton and willful disregard and failure to protect on the part of the defendants, their servants, agents and/or employees upon the premises of said correctional facility known as Rikers Island Correctional Facility.

58.   That by reason of all of the foregoing, the plaintiff was injured.

59.   That the foregoing occurrences, and the resulting injuries to the plaintiff were caused solely by reason of the carelessness, gross negligence, lack of supervision, security, protection, excessive, unnecessary and unreasonable use of force and culpable and wanton acts on the part of the defendant, and without any negligence, cause or provocation on the part of the plaintiff contributing thereto.

60.   That by reason of the foregoing, this plaintiff was severely injured and damaged, rendered sick, sore, lame and disabled, sustained severe nervous shock and mental anguish, great physical pain and emotional upset, some of which injuries are permanent in nature and duration, and plaintiff will be permanently caused to suffer pain, inconvenience and other effects of such injuries; plaintiff incurred and in the future will necessarily incur further hospital and/or medical

expenses in an effort to be cured of said injuries; and plaintiff will be unable to pursue the usual duties with the same degree of efficiency as prior to this occurrence, all to plaintiff's great damage.

61. That on/or about December 22, 2014, and the period of time prescribed by statute and law, the plaintiff caused a Notice of Claim, in writing, sworn to by the plaintiff containing the name and post office address of the plaintiff and plaintiff's attorney, the nature of the claim, the time when, the place where and the manner by which the claim arose, the items of damage and the injuries claimed to have been sustained, to be served upon the defendant THE NEW YORK CITY, by delivering a copy thereof to the person designated by law as a person to whom such claims may be served.

62. That more than thirty (30) days have elapsed since the aforesaid Notice of Claim was served on the said defendants.

63. That the said defendants were negligent and have refused and neglected to adjust, settle and pay the same.

64. That oral examination of the plaintiff was held on March 13, 2015 in compliance with Section 50-H of the General Municipal Law.

65. That this claim has been commenced and this action has been started within one year and ninety days after the happening of the event upon which the claim is based.

66. That all conditions and requirements precedent to the commencement of this action have been complied with.

AS AND FOR A SECOND CAUSE OF ACTION AGAINST THE CITY OF NEW YORK and HAZEL JENNINGS :

67. That plaintiff repeats, reiterates and realleges each and every allegation as contained in the First Cause of Action of the within Complaint with the same force and effect as though

each were more fully set forth at length herein.

68.   That at all times relevant hereto, the defendants THE CITY OF NEW YORK and HAZEL JENNINGS directed and compelled the plaintiff to be confined to solitary confinement for an egregiously long period From March 8, 2014 through August 28, 2014 during his imprisonment at said Rikers Island Correctional Facility.

69.   That the defendants THE CITY OF NEW YORK, THE NEW YORK CITY and HAZEL JENNINGS carelessly, negligently, improperly and inappropriately illegally, unlawfully and intentionally, ordered, directed and compelled the plaintiff to be confined to solitary confinement, specifically the RHU unit at both RNDC and GRVC as noted in the foregoing at paragraphs 47-55, for an egregiously long period of several months during his imprisonment at said Rikers Island Correctional Facility.

70.   That the defendant THE CITY OF NEW YORK, have engaged in a pattern and practice of negligent, improper, inappropriate and illegal use of punitive segregation or solitary confinement, especially in adolescent inmates such as Teron Edwards as evidenced by the United States Attorney's office for the Southern District of New York's open letter to THE CITY OF NEW YORK and DOC, see paragraphs 25, 47-55.

71.   That by reason of all of the foregoing, the plaintiff was seriously and irreparably injured, deprived of his civil and constitutional rights, liberty and freedom, and seriously damaged both physically and psychologically.

72.   That the foregoing occurrence, and the resulting injuries to the plaintiff were caused solely by reason of the carelessness, gross negligence, lack of supervision, security, protection, excessive, unnecessary and unreasonable use of force and culpable and wanton acts on the part of the defendants, and without any negligence, cause or provocation on the part of the plaintiff

contributing thereto.

73.   That by reason of the foregoing, this plaintiff was severely injured and damaged, rendered sick, sore, lame and disabled, sustained severe nervous shock and mental anguish, great physical pain and emotional upset, some of which injuries are permanent in nature and duration, and plaintiff will be permanently caused to suffer pain, inconvenience and other effects of such injuries; plaintiff incurred and in the future will necessarily incur further hospital and/or medical expenses in an effort to be cured of said injuries; and plaintiff will be unable to pursue the usual duties with the same degree of efficiency as prior to this occurrence, all to plaintiff's great damage.

74.   That by reason of the foregoing, plaintiff has been damaged in an amount which exceeds the monetary jurisdictional limits of any and all lower Courts which would otherwise have jurisdiction herein, in an amount to be determined upon the trial of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
## AGAINST THE CITY OF NEW YORK:

75. That plaintiff repeats, reiterates and realleges each and every allegation as contained in the First and Second Causes of Action of the within Complaint with the same force and effect as though each were more fully set forth at length herein.

76.   That at all times relevant hereto, the defendant THE CITY OF  NEW YORK its servants, agents and/or employees provided medical and mental health services for said correctional facility known as Rikers Island Correctional Facility, located in the County of Bronx, City and State of New York.

77.   That at all times relevant hereto, it was the duty of the defendant THE CITY OF NEW YORK, its servants, agents and/or employees to provide adequate medical and mental

health services for inmates at the correctional facility known as Rikers Island Correctional Facility, located in the County of Bronx, City and State of New York.

78. That at all times relevant hereto, it was the duty of the defendant THE CITY OF NEW YORK, its servants, agents and/or employees to provide for the safety, security and protection of persons who were inmates of said correctional facility known as Rikers Island Correctional Facility, located in the County of Bronx, City and State of New York.

79. That at all times relevant hereto, the defendant THE CITY OF NEW YORK, hired, contracted for, furnished and/or employed certain healthcare providers, physicians, nurses, aids and/or personnel to act as servants, agents and/or employees of the said defendant upon the premises of said correctional facility known as Rikers Island Correctional Facility.

80. That at all times relevant hereto, the defendant herein knew or could and should have known that inadequate medical and mental health services were being provided to inmates at the facility known as Rikers Island Correctional Facility (see the open letter to the City of New York, referenced in Paragraph 25).

81. That at all times relevant hereto, the defendants knew or could and should have known that a routine of extraordinary violence by corrections officers and/or personnel was frequent and/or customary and that inappropriate and excessive use of punitive segregation and solitary confinement was being used upon the inmates of said correctional facility known as Rikers Island Correctional Facility.

82. That at all times relevant hereto, it was the duty of the defendants herein, their servants, agents and/or employees to prevent said routine and/or incidents of extraordinary violence by defendant officers and/or personnel and the inappropriate and excessive use of punitive segregation and solitary confinement upon the premises of said correctional facility

known as Rikers Island Correctional Facility.

83.   That commencing on/or about the 29th day of January, 2014, the plaintiff was an inmate upon the premises of said correctional facility known as Rikers Island Correctional Facility, located in the County of Bronx, City and State of New York.

84.   That commencing on the 3rd of February 2014, and continuing through August 28, 2014, the plaintiff Teron Edwards was provided with grossly inadequate and inappropriate medical and mental health services while confined to the correctional facility known as Rikers Island Correctional Facility, located in the County of Bronx, City and State of New York.

85.   That commencing 3rd of February 2014, and continuing through August 28, 2014, the plaintiff was caused to be attacked, assaulted, beaten and battered and improperly subjected to an excessive sentence of punitive segregation while under the care of the defendant THE CITY OF NEW YORK at said correctional facility known as Rikers Island Correctional Facility, located in the County of Bronx, City and State of New York.

86.   That at all times relevant hereto, the defendants egregiously failed, omitted, neglected  and refused to provide for the medical and mental health needs safety, security and protection of the plaintiff, an inmate of said correctional facility known as Rikers Island Correctional Facility, located in the County of Bronx, City and State of New York.

87.   That at all times relevant hereto, the defendant failed to prevent the said custom, routine and/or incidents of extraordinary violence and excessive use of punitive segregation by defendant officers and/or personnel who were acting within the course and scope of their employment for the defendants herein upon the premises of said correctional facility known as Rikers Island Correctional Facility.

88.   That commencing on the 3rd of February 2014, continuing through August 28, 2014,

the plaintiff was caused to sustain serious physical and emotional injuries and a serious deterioration of his mental health as a result of grossly inadequate and inappropriate medical and mental health services provided by defendants, their servants, agents and/or employees upon the premises of said correctional facility known as Rikers Island Correctional Facility.

89.   That by reason of all of the foregoing, the plaintiff was injured.

90.   That the foregoing occurrence, and the resulting injuries to the plaintiff were caused solely by reason of the carelessness, gross negligence, lack of supervision, security, protection, excessive, unnecessary and unreasonable use of force and culpable and wanton acts and failure to provide adequate and appropriate medical and mental health services on the part of the defendant, and without any negligence, cause or provocation on the part of the plaintiff contributing thereto.

91.   That by reason of the foregoing, this plaintiff was severely injured and damaged, rendered sick, sore, lame and disabled, sustained severe nervous shock and mental anguish, great physical pain and emotional upset, some of which injuries are permanent in nature and duration, and plaintiff will be permanently caused to suffer pain, inconvenience and other effects of such injuries; plaintiff incurred and in the future will necessarily incur further hospital and/or medical expenses in an effort to be cured of said injuries; and plaintiff will be unable to pursue the usual duties with the same degree of efficiency as prior to this occurrence, all to plaintiff's great damage.

AS AND FOR A FOURTH CAUSE OF ACTION
AGAINST THE CITY OF NEW YORK:

92.   That plaintiff repeats, reiterates and realleges each and every allegation as contained in the First, Second and Third Causes of Action of the within Complaint with the same force and effect as though each were more fully set forth at length herein.

–19–

93. That this is an action to redress the deprivation under color of statute, ordinance, regulation, custom or usage of a right, privilege and immunity secured to the plaintiff by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States (42 U.S.C. Section 1981, 1983, 1985, 1986 and 1988), the Civil Rights Act, and arising under the law and statutes of the State of New York.

94. Each and all of the acts of the defendants THE CITY OF NEW YORK and   HAZEL JENNINGS and corrections officers  MONROE, SULAIMAN AND LUNDSTROM  were done by said defendants, their servants, agents and/or employees, and each of them, not as individuals, but under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of New York and the City of New York, and under the authority of their office as corrections officers of said City and State.

95. That by reason of the foregoing, plaintiff has been damaged in an amount which exceeds the monetary jurisdictional limits of any and all lower Courts which would otherwise have jurisdiction herein, in an amount to be determined upon the trial of this action.

<u>AS AND FOR A FIFTH CAUSE OF ACTION</u>
<u>AGAINST THE CITY OF NEW YORK:</u>

96. That plaintiff repeats, reiterates and realleges each and every allegation as contained in the First, Second, Third and Fourth Causes of Action of the within Complaint with the same force and effect as though each were more fully set forth at length herein.

97. That at all times herein mentioned, it was the duty of the defendant THE CITY OF NEW YORK to select and screen for hiring for retention or discharge as employees those who are not fit, suitable, properly trained and instructed, constituting a potential menace, hazard or danger to the public or otherwise, those with vicious propensities and those with emotional, physical, psychological, racist, biased and/or physiological traits or characteristics or unsuitable

or unstable or contraindicated for such employment.

98. That at all times herein mentioned, it was the duty of the said defendants to sufficiently hire, train and retain personnel within the DOC so as sufficiently discipline, supervise, promulgate and put into effect appropriate rules applicable to the duties, activities and behaviors of their servants, agents, corrections officers, employees and/or personnel.

99. That by reason of the negligence of the said defendants in their hiring, monitoring, supervision and retention of said defendant and/or corrections officers, with knowledge of the unsuitable, unstable and unfitness to act and serve and unfitness to continue to act and serve as employees by reason of the defendants' breach of said duties, the plaintiff was caused to suffer severe injuries and damage, without fault or want of care on the part of the plaintiff in any way contributing thereto, thereby causing him extreme physical, mental and emotional illness and distress, as well as severe physical, mental and emotional injuries which are permanent in nature and duration.

100. That by reason of the foregoing, plaintiff has been damaged in an amount which exceeds the monetary jurisdictional limits of any and all lower Courts which would otherwise have jurisdiction herein, in an amount to be determined upon the trial of this action.

### AS AND FOR A SIXTH CAUSE OF ACTION AGAINST THE CITY OF NEW YORK, HAZEL JENNINGS and CORRECTIONS OFFICERS MONROE, SULAIMAN AND LUNDSTROM:

101. That plaintiff repeats, reiterates and realleges each and every allegation as contained in the First, Second, Third, Fourth and Fifth Causes of Action of the within Complaint with the same force and effect as though each were more fully set forth at length herein.

102. That the defendant THE CITY OF NEW YORK, herein failed, neglected, omitted and refused to report and correct, rectify and/or discontinue the misconduct, improprieties,

violations and malfeasance of the corrections officers herein.

103.   That the defendant herein intentionally, wantonly, negligently and maliciously conspired and acted in collusion in failing, neglecting, omitting and refusing to report, rectify and/or discontinue the misconduct, improprieties, violations and malfeasance of the defendant police and/or corrections officers herein.

104.   As noted by the U.S. Attorney's office for the Southern District, following their lengthy investigation as to abuse at Rikers, DOC staff routinely inadequately report their use of force, file false reports, and are not adequately disciplined for their improper use of force. A DOC Associate Commissioner acknowledged under reporting use of force as did the Head of the Investigation Division and a Senior Department of Health and Mental Hygiene official admitted a common phrase used by staff at Rikers is "hold it down" meaning do not report the abuse that actually happened at the hands of DOC staff.

105.   Further, when violence against inmates occurs less than one-fifth of the incidents are subject to a full investigation. Those incidents that are investigated are done by Captains with little knowledge of basic investigative skills or procedures. This creates a situation making it easier for corrections officers misconduct to be concealed or overlooked.

106.   The DOC fails to adequately discipline staff due to the poor quality of the investigations into the misconduct, most corrections officers are never found to have violated DOC policies. On the rare instances when violations are found, discipline is wholly inadequate and consists of "counseling" or the loss of vacation time. These corrections officers, who are known to the DOC as guilty of misconduct, remain corrections officers overseeing the inmate population.

107.   That by reason of the foregoing, the plaintiff was caused to sustain severe and

serious injuries in amounts which exceed the monetary jurisdictional limits of any and all lower Courts which would otherwise have jurisdiction herein, in an amount to be determined upon the trial of this action.

## AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST THE CITY OF NEW YORK:

108.  That plaintiff repeats, reiterates and realleges each and every allegation as contained in the First, Second, Third, Fourth, Fifth and Sixth Causes of Action of the within Complaint with the same force and effect as though each were more fully set forth at length herein.

109.  That this is an action to redress the deprivation under color of statute, ordinance, regulation, custom or usage of a right, privilege and immunity secured to the plaintiff by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States (42 U.S.C. Section 1983, 1985, 1986 and 1988) and arising under the law and statutes of the State of New York.

110.  That the defendant THE CITY OF NEW YORK and its DOC have a custom or policy of using excessive force on minorities, inmates and especially adolescent inmates.

111.  That the said defendants custom or policy of using excessive force on inmates, especially adolescent inmates was found to be pervasive following an extensive investigation by the U.S. Attorney's office for the Southern District of New York as detailed in paragraph 25. Specifically, they found a pattern and practice of conduct at Riker's Island that violated the constitutional rights of adolescent inmates, that they are not adequately protected from harm from other inmates, that they are subjected to excessive and unnecessary force from DOC staff, that use of force is underreported and falsified and that punitive segregation is too heavily relied upon for excessive periods of time.

112.  That the deprivation of plaintiff's constitutional rights was the result of defendant

THE CITY OF NEW YORK's custom or policy of using excessive force on inmates, failing to provide for their safety and using punitive segregation excessively.

113. That the defendants THE CITY OF NEW YORK and C.O.s MONROE AND SULAIMAN and other corrections officers have engaged in a pattern and practice of excessive force and extraordinary violence toward the prisoners under their charge. This is inferred from the numerous individual and class action lawsuits brought by inmates of Rikers Island for excessive force including: Fisher v. Koehler, 83 Civ. 2128 (S.D.N.Y), a class action brought in 1990 addressing excessive use of force at Rikers; Reynolds v. Ward, 81 Civ. 101 (S.D.N.Y 1990) class action for excessive and unnecessary for at the Bellevue Prison Psychiatric Ward; Sheppard v. Phoenix, 91 Civ. 4148 (S.D.N.Y. 1998), a class action related to excessive force in the Central Punitive Segregation Unit at Rikers; Anum Moore v. City of New York, Bronx County Index Number 21580/05, case alleging excessive force by corrections officers at Rikers caused broken jaw, settled for $399,000; Reynolds v. City of New York, 11 Civ. 621 (S.D.N.Y.) case alleging excessive force by corrections officers at Rikers caused fractured shoulder and loss of consciousness, settled for $200,500; Mull v. City of New York, 08 Civ. 8854 (S.D.N.Y.) alleging excessive force by corrections officers at Rikers caused brain injury, loss of hearing and eyesight, settled for $550,000; Belvett v. City of New York 09 Civ. 8090 (S.D.N.Y) alleging excessive force by corrections officers at Rikers caused facial fracture, settled for $350,000; Williams v. City of New York, 07 Civ. 11055 (S.D.N.Y.) alleging excessive force by corrections officers at Rikers caused fractured jaw settled for $202,500.

114. That by reason of all of the foregoing, the plaintiff suffered serious injury due to the deprivation of rights under the Constitution, created by such regimen, routine and custom of deliberate indifference to the plaintiff's rights, by policy-level decision on the part of said

defendant THE CITY OF NEW YORK to act, or fail to act.

115. That by reason of all of the foregoing, the plaintiff brings a <u>Monell</u> Claim for serious injury and damages he suffered as a result of the deliberate indifference and heightened level of culpability on the part of the defendant THE CITY OF NEW YORK.

<u>AS AND FOR AN EIGHTH CAUSE OF ACTION AS AGAINST THE CITY OF NEW YORK,<br>HAZEL JENNINGS<br>and CORRECTIONS OFFICERS MONROE, SULAIMAN AND LUNDSTROM:</u>

116. That plaintiff repeats, reiterates and realleges each and every allegation as contained in the First, Second, Third, Fourth, Fifth, Sixth and Seventh Causes of Action of the within Complaint with the same force and effect as though each were more fully set forth at length herein.

117. The acts, omissions and violations by defendants THE CITY OF NEW YORK , HAZEL JENNINGS  and Corrections Officers  MONROE, SULAIMAN and LUNDSTROM were pervasive, persistent and continuous, grossly negligent and evinced a disregard for the safety, well-being and lawful rights of the plaintiff, by reason thereof, the plaintiff is entitled to compensatory and punitive damages and attorneys fees under 42 U.S.C. § 1988  in amounts which exceeds the jurisdictional limits of any and all lower Courts which would otherwise have jurisdiction herein, in amounts to be determined at the time of the trial of this action.

<u>SUPPLEMENTAL JURISDICTION CLAIM</u>

<u>AS AND FOR A NINTH CAUSE OF ACTION AGAINST<br>NEW YORK CITY HEALTH AND HOSPITALS CORP.:</u>

118. That plaintiff repeats, reiterates and realleges each and every allegation as contained in the First, Second and Third Causes of Action of the within Complaint with the same force and effect as though each were more fully set forth at length herein.

119.  That on/or about the 28th day of August, 2014, continuing for a prolonged of time thereafter, the plaintiff was admitted to the Bellevue Hospital Center of the NEW YORK CITY HEALTH & HOSPITALS CORPORATION, while a prisoner under the custody, control and supervision of the defendants THE CITY OF NEW YORK and the DOC.

120.  That on/or about the 28th day of August, 2014, continuing for a prolonged of time thereafter, the plaintiff was admitted to the Bellevue Hospital Center of the NEW YORK CITY HEALTH & HOSPITALS CORPORATION, where the plaintiff received careless, negligent, inadequate and inappropriate medical and mental health treatment while a prisoner under the custody, control and supervision of the defendants THE CITY OF NEW YORK.

121.  That by reason of the foregoing, the plaintiff was caused to sustain further severe and serious injuries, damages, aggravations and exacerbations of the injuries he was suffering, both mentally, emotionally and physically, severe nervous shock, emotional distress and illness, was placed in a position of fear for his life and well-being, was subjected to extreme embarrassment, humiliation, scorn and ridicule, defamation of character, and was severely and further injured and damaged.

122. That by reason of the foregoing, the plaintiff has been damaged in an amount which exceeds the monetary jurisdictional limits of any and all lower Courts which would otherwise have jurisdiction herein, in an amount to be determined upon the trial of this action.

SUPPLEMENTAL JURISDICTION CLAIM

AS AND FOR A TENTH CAUSE OF ACTION AS<br>AGAINST NEW YORK CITY HEALTH & HOSPITALS CORP.:

123.  That plaintiff repeats, reiterates and realleges each and every allegation as contained in the First, Second, Third and Fourth Causes of Action of the within Complaint with the same force and effect as though each were more fully set forth at length herein.

–26–

124.  That at all times herein relevant, the defendant NEW YORK CITY HEALTH & HOSPITALS CORPORATION, was and still is a Municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

125.  That at all times herein relevant, the defendant, NEW YORK CITY HEALTH & HOSPITALS CORPORATION, was and still is a corporation duly organized and existing under and by virtue of the laws of the State of New York.

126.  That at all times herein relevant, the defendant, NEW YORK CITY HEALTH & HOSPITALS CORPORATION, owned a hospital known as Bellevue Hospital Center, located at 462 1st Avenue, in the County of New York, City and State of New York.

127.  That at all times herein relevant, the defendant, NEW YORK CITY HEALTH & HOSPITALS CORPORATION, operated said hospital known as Bellevue Hospital Center, located at 462 1st Avenue, in the County of New York, City and State of New York.

128.  That at all times herein relevant, the defendant, NEW YORK CITY HEALTH & HOSPITALS CORPORATION, maintained said hospital known as Bellevue Hospital Center, located at 462 1st Avenue, in the County of New York, City and State of New York.

129.  That at all times herein relevant, the defendant, NEW YORK CITY HEALTH & HOSPITALS CORPORATION, managed said hospital known as Bellevue Hospital Center, located at 462 1st Avenue, in the County of New York, City and State of New York.

130.  That at all times herein relevant, the defendant, NEW YORK CITY HEALTH & HOSPITALS CORPORATION, controlled said hospital known as Bellevue Hospital Center, located at 462 1st Avenue, in the County of New York, City and State of New York.

131.  That at all times herein relevant, the defendant, NEW YORK CITY HEALTH & HOSPITALS CORPORATION, held itself out as a hospital duly qualified and capable of

rendering competent medical, mental health, nursing, surgical and post-surgical care, testing, treatment, advice, referral, recommendations, management and surgery to the general public, including this plaintiff.

132.   That at all times herein relevant, the defendant, NEW YORK CITY HEALTH & HOSPITALS CORPORATION, its servants, agents and/or employees furnished and/or provided doctors, nurses and other hospital, medical and surgical personnel at the said hospital known as Bellevue Hospital Center, to afford medical, mental health and hospital care, treatment, advice, referral, recommendations, management and treatment to the general public, including the plaintiff herein.

133.   That at all times herein relevant, the defendant, NEW YORK CITY HEALTH & HOSPITALS CORPORATION, did agree to and did hold itself out as maintaining at the said hospital known as Bellevue Hospital Center, an adequate and competent staff, including doctors and other medical and surgical personnel, and further warranted that the members of its said staff were qualified and trained for the purpose of providing such medical and mental health care, advice, testing, referral, recommendation, management, diagnosis and attention as they would be required to provide in accordance with the accepted standards of medical, surgical and hospital practice to persons seeking and requiring hospital, medical, surgical and post-surgical care and attention, including this plaintiff, and said defendant, NEW YORK CITY HEALTH & HOSPITALS CORPORATION, further held itself out as being equipped in sufficient manner to render such care and treatment at its hospital known as Bellevue Hospital Center.

134.   That at all times herein relevant, the defendant, NEW YORK CITY HEALTH & HOSPITALS CORPORATION, furnished, provided, used and employed physicians, interns, residents, nurses, aides, staff members, and others, who were authorized, retained, or permitted

by defendant to order, recommend, request, advise, perform, render, or provide medical, mental health and/or nursing examinations, evaluations, care, diagnoses, treatments, procedures, tests, studies, services, or advice of, for and to patients at said hospital known as Bellevue Hospital Center.

135. That at all times herein relevant, the said hospital known as Bellevue Hospital Center, was and is fully accredited by the Joint Commission on Accreditation of Health Care Organizations and said hospital's manuals, rules, regulations, practices, procedures, techniques and functions were required to be in accordance with the standards and conditions of the said Joint Commission on Accreditation of Health Care Organizations.

136. That on April 29, 2014 through May 2, 2014 and again on August 28, 2014 through January 12, 2015, the plaintiff Teron Edwards came under the care of the defendant NEW YORK CITY HEALTH & HOSPITALS CORPORATION, its servants, agents, affiliated physicians, residents, interns, nurses, aides, employees and/or medical personnel at the said hospital known as Bellevue Hospital Center, in connection with certain medical care and treatment to be rendered to the plaintiff by the said defendant, its servants, agents, affiliated physicians, employees, medical and/or nursing personnel at the said hospital.

137. That commencing approximately from April 29, 2014 through May 2, 2014 and again on August 28, 2014 through January 12, 2015, and for a continuous period of time subsequently thereafter, the plaintiff TERON EDWARDS was admitted as a patient to said Bellevue Hospital Center.

138. That commencing approximately from April 29, 2014 through May 2, 2014 and again on August 28, 2014 through January 12, 2015, and for a continuous period of time subsequently thereafter, the plaintiff TERON EDWARDS was admitted as a patient to said

Bellevue Hospital Center, while a prisoner under the custody, control and supervision of the defendants THE CITY OF NEW YORK and THE NEW YORK CITY DEPARTMENT OF CORRECTIONS.

139.   That the defendant NEW YORK CITY HEALTH & HOSPITALS CORPORATION, its servants, agents, affiliated physicians, residents, interns, nurses, aides, employees and/or medical personnel at the said hospital known as Bellevue Hospital Center, did undertake the treatment of the plaintiff TERON EDWARDS, providing the plaintiff with medical care and attention, and accepted the plaintiff as a patient to the said hospital.

140.   That the defendant NEW YORK CITY HEALTH & HOSPITALS CORPORATION, its servants, agents, affiliated physicians, residents, interns, nurses, aides, employees and/or medical personnel at the said hospital known as Bellevue Hospital Center, undertook to and/or did order, recommend, request, advise, perform, render, or provide medical, surgical and/or nursing examinations, evaluations, consultations, care, treatments, procedures, tests, studies, services, or advice for and to plaintiff TERON EDWARDS.

141.   That the defendant, NEW YORK CITY HEALTH & HOSPITALS CORPORATION, its servants, agents, affiliated physicians, employees, medical and/or nursing personnel at the said hospital known as Bellevue Hospital Center, did undertake to diagnose and treat the plaintiff.

142.   That the foregoing treatment and management of the plaintiff, TERON EDWARDS, by the defendant, NEW YORK CITY HEALTH & HOSPITALS CORPORATION, its servants, agents, affiliated physicians, surgeons, residents, interns, nurses, aides, employees and/or medical personnel at the said hospital was performed in such a careless, negligent and improper manner as to manifest and evidence a disregard for the safety and

well-being of others, including the plaintiff herein, and not in accordance with the good and accepted standards of medical, mental health and hospital care and practice, thereby causing the plaintiff, TERON EDWARDS, to sustain severe injuries and damages.

143.  That while under the care and treatment of the defendant NYCHHC the following occurred to Teron Edwards: he was forcefully injected with medication over his objection, including Intramuscular injections of Haldol and Ativan and was placed under "locked seclusion" on August 28, 2014; defendant NYCHHC failed to determine a psychiatric diagnosis for Mr. Edwards but continued to heavily sedate and medicate him with various antihallucinogenics, antipsychotics and antidepressants; defendant NYCHHC forcefully injected Mr. Edwards with medications including intramuscular injections of Ativan and Thorazine and was placed him under "locked seclusion" again on August 30, 2014; defendant NYCHHC forcefully injected Mr. Edwards with medications including intramuscular injections of Haldol and Ativan and was placed him under "locked seclusion" again on September 1, 2014; defendant NYCHHC failed to obtain all of Mr. Edwards previous medical records including those from St. John's and Riker's Island; NYCHHC began "treatment over objection" "TOO" on September 2, 2014; continuously over-medicated Mr. Edwards in violation of his wishes; defendant NYCHHC disregarded the fact that he was a patient with a known history of dystonic reactions to such medications and he sustained a dystonic reaction on September 5, 2014 due to overmedication; defendant NYCHHC took Mr. Edwards to TOO court and obtaining an order to treat Mr. Edwards, over his objection based upon false and misleading information provided to TOO court; restrained Mr. Edwards on September 9, 2014 to give him an intramuscular injection of medications; prescribed and administered Depakote;  in medicated Mr. Edwards beyond that which the TOO court order provided for; NYCHHC kept Mr. Edwards in Bellevue and on

medications despite Mr. Edwards not having a definitive psychiatric diagnosis and in spite of Mr. Edward's express desire to return to Rikers and cease medication which he alerted the physicians was preventing him from sleeping;   defendant NYCHHC overmedicated Mr. Edwards once again on September 19, 2014 causing a dystonic reaction and obvious signs of reaction including stiffness and his eyes rolling back in his head; defendant NYCHHC placed and kept Mr. Edwards in restraints on September 22, 2014 and overmedicated him with additional intramuscular Ativan and Zyprexa; defendant NYCHHC forcefully administered medication Lithium beginning on September 22, 2014; defendant NYCHHC kept Mr. Edwards secluded and on "CO" and "room restriction" which amounted to solitary confinement; defendant NYCHHC raised his lithium level on September 26, 2014; defendant NYCHHC placed and kept him in restraints on September 26, 2014 and forcefully injected  intramuscular medication; defendant NYCHHC administered Risperdal beginning on October 2, 2014; defendant NYCHHC subjected him to restraints and administered Thorazine and Ativan on October, 8, 2014; defendant NYCHHC ignored Mr. Edwards constant complaints of abdominal pain; defendant NYCHHC placed and kept Mr. Edwards in restraints on October 14, 2014 and forcefully injected him with medications; defendant NYCHHC administered Clozaril beginning on October 15, 2014; defendant NYCHHC allowed the plaintiff to be assaulted and battered by hospital staff and DOC staff on October 19, 2014; defendant NYCHHC described Mr. Edward's injury as a "slight abrasion" and delayed treatment for the significant injuries he actually sustained including an acute fracture of his left lamina papyracea with herniation of orbital fat through the defect, corneal abrasion and traumatic iritis; defendant NYCHHC ignored Mr. Edwards when he began to complain about not feeling well on October 22, 2014; defendant NYCHHC did not take nor record plaintiff's vital signs, including his temperature, respirations, and oxygen saturation once

he reported not feeling well; defendant NYCHHC and their staff observed Mr. Edwards shivering and sweating under the covers in his bed on October 27, 2014 and did not order any examination, observation or testing; defendant NYCHHC ignored the cough Mr. Edwards developed; NYCHHC staff found Mr. Edwards incontinent of stool, febrile to almost 102 and tachycardic on November 2, 2014; defendant NYCHHC staff recorded his oxygen saturation at only 86% on November 5, 2014 and recorded obvious increased work of breathing as observed; NYCHHC staff did not intubate Mr. Edwards until November 7, 2014; defendant NYCHHC allowed Mr. Edwards to become hypoxic; defendant NYCHHC allowed Mr. Edwards to contract Legionnaire's disease; defendant NYCHHC provided him with contaminated water and subjected him to contaminated air conditioning and air filtration through the hospital; defendant NYCHHC did not diagnose and or treat the cause of his pneumonia; defendant NYCHHC wrongly diagnosed him with HIV; Mr. Edwards remained intubated until November 18, 2014; Mr. Edwards became deconditioned and barely able to walk; Mr. Edwards to developed parietal vasogenic edema in the right lobe from NYCHHC staff and or DOC staff striking plaintiff multiple times in the head causing traumatic vasogenic right lobe edema; Mr. Edwards had a seizure on November 22, 2014; thereafter Mr. Edwards became catatonic; after sustaining the traumatic head injury he was subjected to a lumbar puncture after he complained of headaches due to his traumatic vasogenic right lobe edema; Mr. Edwards was struck and assaulted and the subject of excessive force by DOC staff members on December 8, 2014 wherein he sustained extensive soft tissue swelling of the left face and orbit, zygomatic arch hasal bone fracture and left-sided hemotypanum and pain and decreased range of motion of the left shoulder; Mr. Edwards was transferred Mr. Edwards back to the psych floor prior to his being medically stable.

144.   The defendant NYCHHC, its physicians, nurses, staff, employees and agents

departed from accepted standards of medical care and were negligent in the following actions and/or inactions with respect to their care and treatment of Teron Edwards: it was a departure from accepted standards of medical care to forcefully inject Mr. Edwards with medication over his objection, including Intramuscular injections of Haldol and Ativan on multiple occaisions including August 28, 2014, August 30, 2014, September 1, 2014, September 9, 2014, September 22, 2014, September 26, 2014, October 2, 2014, October 8, 2014, and October 14, 2014; they negligently failed to determine a psychiatric diagnosis for Mr. Edwards but continued to heavily sedate and medicate him with various antihallucinogenics, antipsychotics and antidepressants; they negligently failed to obtain all of Mr. Edwards previous medical records including those from St. John's and Riker's Island; they departed from accepted standards of practice by forcing "treatment over objection" "TOO" on September 2, 2014; they departed from accepted standards of practice by continuously over-medicating Mr. Edwards in violation of his wishes and in blatant disregard for the fact that he was a patient with a known history of dystonic reactions to such medications; they negligently caused a dystonic reaction on September 5, 2014 due to overmedication; they negligently took Mr. Edwards to TOO court and obtaining an order to treat Mr. Edwards, over his objection based upon false and misleading information provided to TOO court; they negligently prescribed and administered Depakote;  they negligently medicated Mr. Edwards beyond that which the TOO court order provided for; departed from accepted standards of practice by keeping Mr. Edwards in Bellevue and on medications despite Mr. Edwards not having a definitive psychiatric diagnosis and in spite of Mr. Edward's express desire to return to Rikers and cease medication which he alerted the physicians was preventing him from sleeping; they negligently overmedicated Mr. Edwards causing a dystonic reaction and failed to take into account obvious signs of reaction including stiffness and his eyes rolling back in his head; they

departed from accepted standard of practice by forcefully administered medication Lithium beginning on September 22, 2014; defendant NYCHHC negligently kept Mr. Edwards secluded and on "CO" and "room restriction" which amounted to solitary confinement; they negligently raised his lithium level on September 26, 2014; they negligently administered Risperdal beginning on October 2, 2014; they departed from accepted standards of practice in ignoring Mr. Edwards constant complaints of abdominal pain and failing to properly treat his complaints; they negligently prescribed and administered Clozaril beginning on October 15, 2014; they negligently allowed plaintiff to be assaulted and battered by hospital staff and DOC staff on October 19, 2014; they negligently described Mr. Edward's injury as a "slight abrasion" and departed from accepted standards of practice in delaying treatment for the significant injuries he actually sustained including an acute fracture of his left lamina papyracea with herniation of orbital fat through the defect, corneal abrasion and traumatic iritis; in negligently treating said injuries; in failing to conduct proper and adequate ophthalmology examinations after said serious injuries; in failing to treat his severe dry eyes during the course of his admission in ignoring and failing to properly diagnose Mr. Edwards when he began to complain about not feeling well on October 22, 2014; in failing to properly take and record plaintiff's vital signs, including his temperature, respirations and oxygen saturation once he reported not feeling well; in failing to properly monitor, observe, diagnose and treat Mr. Edwards when he began shivering and sweating under the covers of his bed on October 27, 2014; in failing to properly treat the cough that Mr. Edwards had developed and in failing to call proper medical consults in a timely manner; in negligently allowing Mr. Edwards' condition to deteriorate to a state where he was incontinent of stool, febrile to almost 102 and tachycardic before calling for a medical consult; in negligently treating him once a medical consult was called; in failing to consider pneumonia and

Legionaries Disease in the differential diagnosis; in allowing his oxygen saturation to drop to 86% on November 5, 2014; in failing to order a stat arterial blood gas at that point and take other appropriate measures; in failing to timely address his declining oxygenation leading to need for intubation on November 7, 2014; in negligently allowing Mr. Edwards to become hypoxic; in negligently allowing Mr. Edwards to contract Legionnaire's disease; in negligently providing him with contaminated water and subjecting him to contaminated air conditioning and air filtration through the hospital; in failing to properly diagnose and or treat the cause of his pneumonia; in wrongly diagnosing him with HIV;  in prescribing improper, inadequate and contraindicated antibiotics; in failing to prescribe the proper antibiotics; in negligently causing Mr. Edwards to remain intubated until November 18, 2014; in allowing Mr. Edwards became deconditioned and barely able to walk; in allowing Mr. Edwards to develop parietal vasogenic edema in the right lobe from NYCHHC staff and or DOC staff striking plaintiff multiple times in the head causing traumatic vasogenic right lobe edema; in negligently treating the aforementioned condition; in negligently treating and medicating the plaintiff causing him to have  a seizure on November 22, 2014; in overmedicating Mr. Edwards thereafter causing him to became catatonic; in negligently treating his traumatic head injury and complaints of headache and needlessly subjecting him to a lumbar puncture after he complained of a headache due to head trauma; in allowing Mr. Edwards to be struck and assaulted and the subject of excessive force by DOC members who beat him repeatedly on the head and body causing him to sustain extensive soft tissue swelling of the left face and orbit, zygomatic arch, nasal bone fracture and left-sided hemotypanum and pain and decreased range of motion of the left shoulder; in negligently treating Mr. Edwards for all injuries he sustained on December 8, 2014; in negligently transferring Mr. Edwards out of the medical floor and back to the psych floow prior

to his being medically stable; in continuously overmedicating Mr. Edwards with throughout his admission in Bellevue up until his discharge to Kirby Psychiatirc Center on January 15, 2015; and in failing to determine a proper mental health diagnosis for Mr. Edwards during his admission.

145.   That the medical, surgical, post-surgical and hospital procedures, examinations, evaluations, care, treatments, tests, studies, services, or advice ordered, requested, recommended, advised, performed, rendered, or provided to plaintiff by the defendants herein, were ordered, requested, recommended, advised, performed, rendered, or provided by persons who were incompetent or unqualified to order, recommend, request, advise, perform, render or provide examinations, evaluations, care, treatments, procedures, tests, studies, services or advice to and/or for the plaintiff.

146.   That the said defendants, and those persons who ordered, requested, recommended, advised, performed, rendered, or provided examinations, evaluations, care, treatments, procedures, tests, studies, services, or advice to and/or for the plaintiff at said hospital were incompetent and/or unqualified to order, recommend, request, advise, perform, render, or provide such professional examinations, evaluations, care, treatments, procedures, tests, studies, services, or advice of, for, and to plaintiff.

147.   The defendant NEW YORK CITY HEALTH & HOSPITALS CORPORATION, failed to promulgate, enforce, abide by, or follow appropriate rules, regulations, guidelines, procedures, policies, or protocols with respect to the performing, rendering or providing of medical, surgical and/or nursing procedures, examinations, evaluations, care, treatments, tests, studies, services, or advice to and/or for the patients at said hospital including the plaintiff herein.

148.   That by reason of the foregoing, the plaintiff, TERON EDWARDS, was severely

injured and damaged, rendered sick, sore, lame and disabled, sustained severe nervous shock and mental anguish, great physical pain and emotional upset, some of which injuries are permanent in nature and duration, and plaintiff will be permanently caused to suffer pain, inconvenience and other effects of such injuries;  plaintiff incurred and in the future will necessarily incur further hospital and/or medical expenses in an effort to be cured of said injuries; and plaintiff has suffered and in the future will necessarily suffer additional loss of time and earnings from employment; and plaintiff will be unable to pursue the usual duties with the same degree of efficiency as prior to the negligence and malpractice of the defendant, all to plaintiff's great damage.

149.   That this action falls within one or more of the exceptions set forth in CPLR 1602.

150.   Pursuant to CPLR Section 1602(2)(iv), defendant NEW YORK CITY HEALTH & HOSPITALS CORPORATION, is jointly and severally liable for all of plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that defendant owed the plaintiff a non-delegable duty of care.

151.   Pursuant to CPLR Section 1602(2)(iv), said defendant is jointly and severally liable for all of plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said defendant is vicariously liable for the negligent acts and omissions of those servants, agents and/or employees who acted at the direction of and/or conjunction with the defendant herein.

152.   That on December 22, 2014, and within 90 days after the claim served upon arose, the plaintiff caused a Notice of Claim, in writing, sworn to by the plaintiff containing the name and post office address of the plaintiff and plaintiff's attorneys, the nature of the claim, the time

when, the place where and the manner by which the claim arose, the items of damage and the injuries claimed to have been sustained, to be served upon the defendant NEW YORK CITY HEALTH & HOSPITALS CORPORATION, by delivering a copy thereof to the person designated by law as a person to whom such claims may be served.

153.   That more than thirty (30) days have elapsed since the aforesaid Notice of Claim was served on the said defendant.

154.   That the said defendant was negligent and has refused and neglected to adjust, settle and pay the same.

155.   That this claim has been commenced and this action has been started within one year and ninety days after the happening of the event upon which the claim is based.

156.   That all conditions and requirements precedent to the commencement of this action have been complied with.

157.   That oral examination of the plaintiff was held on March 13, 2015 in compliance with Section 50-H of the General Municipal Law.

158.   That by reason of the foregoing, the plaintiff has sustained serious injuries and damages in an amount in excess of the monetary jurisdictional limits of any and all lower Courts which would otherwise have jurisdiction, in an amount to be determined upon the trial of this action.

SUPPLEMENTAL JURISDICTION CLAIM

AS AND FOR A ELEVENTH CAUSE OF ACTION AS<br/>AGAINST NEW YORK CITY HEALTH & HOSPITALS CORP.:

159.   That plaintiff repeats, reiterates and realleges each and every allegation as contained in the First, Second, Third, Fourth and Fifth, Causes of Action of the within Complaint with the same force and effect as though each were more fully set forth at length herein.

160.  At all of the times herein mentioned, defendant, NEW YORK CITY HEALTH & HOSPITALS CORPORATION, its agents, servants, employees, or those persons who ordered, requested, recommended, advised, performed, rendered, or provided examinations, tests, evaluations, interpretations, referrals, consultations, care, treatments, procedures, tests, studies, services, or advice of, for, and to plaintiff on behalf of, jointly with, or under the supervision of defendants herein, failed to inform and/or failed to fully inform plaintiff or to warn and/or to fully warn plaintiff, of the nature, purposes, known perils, recognized hazards, risks, or possible complications of the examinations, evaluations, diagnoses, consultations, care, treatments, procedures, tests, studies, services, or advice ordered for, requested for, recommended for, advised for, performed upon, rendered to, or provided to plaintiff; nor did defendant nor did said persons inform plaintiff of any alternative methods of treatment; nor did defendant nor did said persons, obtain an informed consent by or on behalf of plaintiff regarding the outcome or possible consequences of the examinations, evaluations, diagnoses, consultations, care, treatments, procedures, tests, studies, services, or advice ordered, requested, recommended, advised, performed, rendered, or provided, or omitted to be ordered, requested, recommended, advised, performed, rendered, or provided, of, for, and to plaintiff.

161.  At all of the times herein mentioned, defendant, NEW YORK CITY HEALTH & HOSPITALS CORPORATION, its agents, servants, employees, or those persons who ordered, requested, recommended, advised, performed, rendered, or provided examinations, evaluations, diagnoses, consultations, care, treatments, procedures, tests, studies, services, or advice of, for, and to plaintiff on behalf of, jointly with, or under the supervision of defendants herein, failed to inform and/or to fully inform plaintiff, or plaintiff's lawful representative, or to warn and/or to fully warn plaintiff, of the nature, purposes, known perils, recognized hazards, risks, or possible

complications of the examinations, evaluations, diagnoses, consultations, care, treatments, procedures, tests, studies, services, or advice ordered for, requested for, recommended for, advised for, performed upon, rendered to, or provided to plaintiff; nor did defendants nor did said persons inform plaintiff of any alternative methods of treatment; nor did defendant, nor did said persons, obtain an informed consent by or on behalf of plaintiff regarding the outcome or possible consequences of the examinations, evaluations, diagnoses, consultations, care, treatments, procedures, tests, studies, services, or advice ordered, requested, recommended, advised, performed, rendered, or provided, or omitted to be ordered, requested, recommended, advised, performed, rendered, or provided, of, for, and to plaintiff, which failures individually and/or together constituted deceptive acts and/or practices by the defendants in the conduct of their business and/or trade, and/or the furnishing of services by the defendants.

162. As a result of all of the foregoing, plaintiff and/or plaintiff's representative were denied the opportunity to make an informed decision as to the examinations, evaluations, diagnoses, consultations, care, treatments, procedures, tests, studies, services, or advice ordered, requested, recommended, advised, performed, rendered, or provided to them.

163. As a result of all of the foregoing, plaintiff and/or plaintiff's representatives were denied the opportunity to seek alternative examinations, evaluations, interpretations, referrals, diagnoses, consultations, care, treatments, procedures, tests, studies, services, or advice which care, treatments, procedures, tests, studies, services, or advice he would have chosen or elected had he been informed and/or fully informed as to the nature, purposes, known perils, recognized hazards, risks, and possible complications of the examinations, evaluations, interpretations, referrals, diagnoses, consultations, care, treatments, procedures, tests, studies, services, or advice ordered for, requested for, recommended for, advised for, performed upon, rendered to, or

provided to plaintiff.

164. Had a reasonably prudent person in the condition of plaintiff been fully informed as to the nature, purposes, known perils, recognized hazards, risks, and possible complications of the examinations, evaluations, diagnoses, consultations, care, treatments, procedures, tests, studies, services, or advice which were ordered, requested, recommended, advised, performed, rendered, or provided for, upon, or to plaintiff, a reasonably prudent person in the condition of plaintiff would have refused said examinations, evaluations, interpretations, referrals, diagnoses, consultations, care, treatments, procedures, tests, studies, services, or advice, or would have sought and/or obtained alternative examinations, evaluations, interpretations, referrals, diagnoses, consultations, care, treatments, procedures, tests, studies, services, and/or advice.

165. Had plaintiff or his representative been fully informed as to the nature, purposes, known perils, recognized hazards, risks, and possible complications of the examinations, evaluations, interpretations, referrals, diagnoses, consultations, care, treatments, procedures, tests, studies, services, or advice ordered, requested, recommended, advised, performed, rendered, or provided for, upon, or to plaintiff, plaintiff would have refused said examinations, evaluations, interpretations, referrals, diagnoses, consultations, care, treatments, procedures, tests, studies, services, or advice, or would have sought and/or obtained alternative examinations, evaluations, diagnoses, consultations, care, treatments, procedures, tests, studies, services, and/or advice.

166. As a result of all of the foregoing, plaintiff was caused to and did suffer and sustain severe and serious personal injuries.

167. As a result of all of the foregoing, plaintiff was caused to and did suffer and sustain severe and serious conscious pain and suffering.

168.   As a result of all of the foregoing, plaintiff was caused to and did suffer and sustain severe and serious mental anguish.

169.   As a result of all of the foregoing, plaintiff was caused to and did suffer and sustain severe and serious economic losses.

170.   The aforesaid severe and serious personal injuries, severe and serious conscious pain and suffering, severe and serious mental anguish, and severe and serious economic losses suffered and sustained by plaintiff were occasioned by reason of the negligence, carelessness, and/or malpractice of defendant herein, his servants, employees, or those persons who ordered, requested, recommended, advised, performed, rendered, or provided examinations, evaluations, diagnoses, consultations, care, treatments, procedures, studies, tests, services, or advice of, for, and to plaintiff on behalf of, jointly with, or under the supervision of defendant herein, and said injuries were in no way contributed to by plaintiff.

171.   The aforesaid severe and serious personal injuries, severe and serious conscious pain and suffering, severe and serious mental anguish, and severe and serious economic losses suffered and sustained by plaintiff were occasioned by the careless, negligent, deceptive acts and/or practices of the defendants in the conduct of his business and/or trade, and/or the furnishing of services by the defendant, and said injuries were in no way contributed to by plaintiff.

172.   As a result of all of the foregoing, plaintiff has been injured and damaged in a sum which exceeds the jurisdictional limitations of all lower Courts which would otherwise have jurisdiction over this action.

SUPPLEMENTAL JURISDICTION CLAIM

AS AND FOR A TWELFTH CAUSE OF ACTION AS
AGAINST THE DEFENDANT NEW YORK CITY HEALTH & HOSPITALS CORP.:

173.   That plaintiff repeats, reiterates and realleges each and every allegation as contained in the First, Second, Third, Fourth, Fifth and Sixth Causes of Action of the within Complaint with the same force and effect as though each were more fully set forth at length herein.

174.   That at all times herein mentioned, the defendant NEW YORK CITY HEALTH & HOSPITALS CORPORATION, had the duty to properly and adequately select and screen for hiring for retention or discharge as employees those physicians, medical and surgical personnel who are not fit, suitable, qualified, skilled, properly trained, supervised and instructed.

175.   That all times herein mentioned, it was the duty of the said defendant to properly and adequately train, discipline, supervise, promulgate and put into effect appropriate rules applicable to the duties, activities and practices of its servants, agents, affiliated physicians, surgeons and/or employees performing hospital, medical, nursing and/or surgical procedures.

176.   That all times herein mentioned, it was the duty of the said defendant to supervise, promulgate, enforce, instruct, advise, abide by, require or ensure the appropriate rules, regulations, guidelines, procedures, policies or protocols with respect to the duties, activities and practices of its servants, agents, affiliated physicians, surgeons, nurses and/or employees performing medical and/or surgical procedures.

177.   That all times herein mentioned, it was the duty of the said defendant to entrust the care of the plaintiff to physicians and personnel who possessed the necessary and required skill, experience, judgment, diligence and capability perform such duties, activities and practices as were required and rendered to the plaintiff at said hospital and/or medical facilities.

178.   That at all times herein mentioned, the defendant NEW YORK CITY HEALTH &

HOSPITALS CORPORATION, failed, neglected and omitted to properly and adequately select and screen for hiring for retention or discharge as employees those physicians, medical and surgical personnel who are not fit, suitable, qualified, skilled, properly trained, supervised and instructed.

179.   That all times herein mentioned, the said defendants failed, neglected and omitted to properly and adequately train, discipline, supervise, promulgate and put into effect appropriate rules applicable to the duties, activities and practices of its servants, agents, affiliated physicians and/or employees performing hospital, medical, nursing and/or surgical procedures.

180.   That all times herein mentioned, the said defendants failed, neglected and omitted to supervise, promulgate, enforce, instruct, advise, abide by, require or ensure the appropriate rules, regulations, guidelines, procedures, policies or protocols with respect to the duties, activities and practices of its servants, agents, affiliated physicians, surgeons, nurses and/or employees performing medical and/or surgical procedures.

181.   That all times herein mentioned, the said defendants failed, neglected and omitted to entrust the care and supervision of the plaintiff to physicians and personnel who possessed the necessary and required skill, experience, judgment, diligence and capability perform such duties, activities and practices as were required and rendered to the plaintiff at said hospital and/or medical facilities.

182.   As a result of all of the foregoing, plaintiff has been injured and damaged in a sum which exceeds the jurisdictional limitations of all lower Courts which would otherwise have jurisdiction over this action.

<u>AS AND FOR A THIRTEENTH CAUSE OF ACTION AS AGAINST NEW YORK CITY ,
CORRECTIONS OFFICER ANTHONY SULAIMAN AND NEW YORK CITY HEALTH &
HOSPITALS CORP</u>:

183.  That plaintiff repeats, reiterates and realleges each and every allegation as contained

in the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh and

Twelfth Causes of Action of the within Complaint with the same force and effect as though each

were more fully set forth at length herein.

184.  That the defendants NEW YORK CITY through their employees and agents,

members of the DOC and NEW YORK CITY HEALTH & HOSPITALS CORPORATION were

negligent in allowing Teron Edwards to be assaulted by other patients, and assaulted and battered

and become the victim of excessive force by both hospital staff and the DOC on multiple

occasions from August 28, 2014 through January 15, 2015. That Teron Edwards was subjected

to assault by other inmates/patients on August 28, 2014, was subjected to excessive force when

he was assaulted by NYCHHC staff and DOC staff on August 28, 2014; was subjected to

excessive force when he was assaulted  by NYCHHC staff and DOC staff on September 1, 2014;

was subjected to excessive force when he was assaulted  by NYCHHC staff and DOC staff on

September 5, 2014. Additionally, Mr. Edwards was subjected to egregious and unwarranted

excessive force by  members of the NYCHHC staff and the DOC staff on October 19, 2014,

when multiple blows to the head caused him to sustain an acute fracture of his left lamina

papyracea with herniation of orbital fat through the defect, corneal abrasion and traumatic iritis.

Additionally, he was negligently subjected to the excessive force by NYCHHC staff and DOC

staff, including ANTHONY SULAIMAN,  on December 8, 2014 wherein he was hit multiple

times in his face and his body causing him to sustain a nasal bone fracture, sustained extensive

soft tissue swelling of the left face and orbit, zygomatic arch and left-sided hemotypanum and

pain and decreased range of motion of the left shoulder.

WHEREFORE, plaintiff demands judgment against the defendants, the amount sought on each Cause of Action exceeding the monetary jurisdictional limits of any and all lower Courts which would otherwise have jurisdiction, in amounts to be determined upon the trial of this action, together with the costs and disbursements of this action, and with interest from the date of this occurrence.

Dated: New York, New York
      October 23, 2017

Yours, etc.,

BURNS & HARRIS
Attorneys for Plaintiff

SETH A. HARRIS
233 Broadway
New York, New York 10279
(212) 393-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
TERON EDWARDS, BY HIS GUARDIAN AD LITEM,
NIKIA EDWARDS,

                              Plaintiff,                      Docket No: 15-CV-3637

    -against-                                    CERTIFICATE
                                              OF MERIT
THE CITY OF NEW YORK, HAZEL JENNINGS,
Corrections Officers MONROE, ANTHONY SULAIMAN,
LUNDSTROM and NEW YORK CITY HEALTH &
HOSPITALS CORP.,

                              Defendants
-------------------------------------------------------------------X

      SETH A. HARRIS, Esq., an attorney duly admitted to practice law in the Courts of this State,

affirms the following to be true under the penalties of perjury:

      That I am an attorney in the law firm of BURNS & HARRIS, ESQS. attorneys for the

plaintiffs in the above-entitled action, and as such, am fully familiar with the facts and circumstances

surrounding this matter based upon the file maintained in our office.

      That I make this Certificate of Merit, pursuant to Section 3012-a of the CPLR, and state as

follows:

      That I have reviewed the facts of this case and have consulted with at least one physician

who is licensed to practice in this State, and whom I reasonably believe is knowledgeable in the

relevant issues involved in this particular action, and that I have concluded on the basis of such

review and consultation that there is a reasonable basis for the commencement of such action.

Dated: New York, New York
       October 23, 2017

                                    SETH A. HARRIS

RE:   TERON EDWARDS

## **ATTORNEY VERIFICATION**

SETH  A. HARRIS, ESQ., an attorney duly admitted to practice law in the Courts of the State of New York, shows:

I am the attorney for the plaintiff in the within action and have read the foregoing AMENDED COMPLAINT the contents thereof; the same is true upon information and belief.

This verification is made by this affirmant and not by said plaintiff because said plaintiff reside(s) in a County other than the County wherein your affirmant maintains her office.

The grounds of affirmant's knowledge and belief are as follows:  Conference with clients and notes and records contained in the file maintained in the regular course of business.

The undersigned affirms that the foregoing statements are true under the penalties of perjury.

Dated: New York, New York
      October 23, 2017

_____
SETH A. HARRIS